My name is Jay Toney. I represent Mr. Lewis. This is a homicide case where one of two people could have done it. Nobody else. Just one of two people. The two were related, closely related, and knew each other. In a remarkable situation, the one subject had his lawyer represent the other at trial. And the result was the conviction that is now before you. How big was the community? How big is, like, Placerville? Yeah. Oh, like everything else in Northern California, it's growing. But I live in Woodland, which is 50,000, and that area is probably a little bigger now. And when you take all of that county, that's an amazing county because it goes right over the Sierra. And so there's the Tahoe area in that county, and now Sacramento has built out into the foothills. My question is, apparently there are a lot of lawyers in town. Well, it's not like San Francisco, but there are two things about it. One is there's a lot of – there's a fair amount of lawyers, but also it's part of the Sacramento metropolitan area. So you'd have all the Sacramento council available. They'd be driving about 20 minutes up into the foothills to represent. And it's interesting that Weiner, of course, was representing the other possible murderer in Sacramento at the time that Lewis was persuaded to hire Weiner for his defense. To me, the dramatic part of this record, as I read it, was the affidavits from Frank Vilt, a former U.S. marshal, that really gets gone. That's what's puzzling about the case. I mean, he made a lot of charges which are not part of the appeal. There are places in the record, the state court opinion, and I think other places, which make allusions to why he is not a credible witness and what his things – the ways he was impeached. None of that seems to be before us at this point. I mean, if there would have been a – if he were a credible witness, if what he said were believable, there would be all kinds of basis for appeal here, like failure to investigate. He says he heard people. There were people who heard the nephew confess to the crime. None of that's before us for, I assume, some good reason. So it's hard to rely on Vilt now if nobody's raising on appeal anything relating to what he said, because if what he said was true, the ineffectiveness is far worse than we have before us now. Well, in the motion for new trial, when Robert Blaser came in and took over the case, and we have in the excerpts of record the matters filed in the superior court that detailed the reasons for the new trial, and I believe that is properly before you at this point. Well, no, nobody's claiming that the counsel's ineffectiveness for not conducting the investigation, not interviewing the witnesses that Vilt suggested, not presenting any of that at the time of trial. If you believe Vilt, he told counsel, here are the witnesses that will get him acquitted. Here are the witnesses that say he did it. Those witnesses were never produced. There's no suggestion they were ever interviewed. But there's no claim that that was ineffectiveness on appeal. The problem is that especially when you have statements attributed to from Vilt that I got Lewis to be represented by Weiner because he's my insurance policy, which is in the record, then I don't see how you can get around the fact that you're now into actual conflict of interest. If you believe Vilt, if you have a finding that Vilt is not credible, and I don't know why. I mean, there are allusions to his history in law enforcement and other things that came out at the time of the post-trial motion. But you're right. If you believe Vilt, it's one thing. If you don't, it's something else. All right. In any event, could you talk about the prejudice? Let's assume there was a conflict for a moment. And we may not hold you to your 10 minutes here, because there are some serious issues in this case, unlike some of the others we had earlier. What do you think that the counsel did? How was his performance affected? Well, the one obvious point, which I don't think is the most severe point, but the obvious point was the failure to impeach with a prior conviction where he was the attorney on it. There was the — The drunk driving? Right. With injury, which the public court says is actually ineffective assistance because it was a significant one. And it would have actually, I think, had some impact more than just the routine thing that you throw at the jury, because there's clearly drugs and alcohol going here and people doing crazy things. So that's the kind of thing you'd want to paint this man as having in his background. But I think it goes back to the failure to investigate the people, the failure to follow up. But there's no charge of that, is there, that he failed to investigate? I don't see that we have here any claim about the failure to investigate. That's what I said before. That would seem to me a much — if you believe that, a much easier case just for straight ineffectiveness. But I don't see that that's been raised. Am I wrong? When — I think it's — I think you get to the same point by a different route. You know, if the — there has to be, for instance, I think there's some allusion in the motion for a new trial to maybe tactical considerations that Weiner had. You know, at one point he says Vilt might have been a very bad witness. I think that's, you know, his situation. And normally that's the kind of tactical thing that an attorney would have deference to him. But in this case, there doesn't appear to be any reason other than the conflict that causes this lack of scrutiny. He's just not following up on these things that involve his former client. And, I mean, just this — the question of this key witness, the only real witness they had, of did you ever say that I was your insurance policy, is not a question that Weiner could ask. And I think it tainted his representation all the way along. I think that when Vilt is bringing him this information, as it appears, and Weiner is then not following through on it, it shows the type of thing that is a conflict. And I think it was, you know, fairly raised in the State courts as well as the trial court when Robert Blaser took over for Weiner. I understand the distinction, but I'm thinking — my thinking is that you get to the same place because of the conflict. And when you have evidence that somebody said that you were defending somebody because you were this other person's insurance policy, I think you have to get out of the case or this type of thing happens. So I think that what is masked as some sort of tactical decision really goes back to an inherent conflict that he wasn't listening and wasn't following the leads that Vilt gave him. I mean, if nothing else, if there was a doubt about Vilt and he said that so-and-so said this, you know, you could send somebody who you trusted out to do it, and that was never done. So that's where I see the case. Thank you, Your Honor. May it please the Court. My name is Catherine Tennant, and I represent the people of the State of California. And I believe that the issue on appeal here is the conflict of interest. And not the other issues that we discussed or that counsel was discussing. See, what normally happens in murder cases, the defense is I didn't do it, somebody else did. Correct. Now, that's the usual, ordinary, standard defense. Right. In this case, the lawyer couldn't do that. He sure did. I think that he did an excellent job of doing that. He said, I mean, that's actually a pretty strong record for the prosecution in this case, is that David Weiner, that was his whole defense, was that, hey, it's Stephen Berg. Stephen Berg, he's a liar. He's an alcoholic. He's a methamphetamine dealer and user. Yeah, but he didn't say that he was the murderer. He sure did. Oh, yeah. He did? He did, yes. He proclaimed that Berg's the one that killed him, and if it wasn't an accident, it was intentional. And I think that's really why we don't have a problem in this case, because there was no adverse effect that resulted, and the representation was actually really competent. If anything, I think that the defendant here was advantaged because of the fact that Weiner had a lot of information about Berg. Weiner knew about Berg's prior convictions for burglary out of Oregon. You know, he knew that he basically he had he was privy to attorney-client information. So I think that helped. The prosecution brought out the prior convictions. Didn't the prosecution? Yes. But the record indicates that the prosecution got that information from Weiner. How did they get it from Weiner? That was a I just read that this morning. I think that he discovered that, the prosecution, and so the point was. He was supplying the prosecution with evidence? Yes. Discovery. So I think that that was information. That was a point that the court of appeal below made was that, hey, this was actually advantageous to Lewis because the prosecution may not have found this information if it hadn't been for Weiner turning it over during the course of discovery. So I think that that was actually something that helped. And to begin with, in this case. I don't understand how they get discovery from the defendant about his accuser's criminal record. That doesn't make much sense. Probably because of the fact that this conflict was something that was not hidden. It was out in the open. And our position is that this wasn't a conflict that was ongoing, but it was a former conflict. And I think that probably had come out because of the fact that Burke had been a prior client. But I think your point is I understand your point, but that's in the record, and I don't dispute the record on that point. So I think that that was actually to Lewis' advantage, the fact that Weiner had this credibility information that was used to impeach Burke. Here, Burke was represented by Weiner on a DUI, and that took place before the trial began on the murder case involving Lewis. But it was still going on, I thought. You had to get a release from him and stop representing. Right. Right. But I think for that reason also, to me, this doesn't seem real problematic because it wasn't related to a murder. It was something, you know, it was a minor matter. Weiner was a felony because whatever it was, it was his fourth offense. Right. The DUI. And it was a felony conviction. Right. In California, having a felony conviction is not a minor matter. No. If you sneeze after a felony conviction, you go to prison for life. I agree. Here's a witness that had four burglaries that were brought out at trial. Plus, everyone can tell that he's drinking and taking methamphetamine and that he's cleaning a shotgun. So this felony conviction could have resulted in a life sentence for him. Burgs? Yeah. Yes, as a strike. Yeah. So it was hardly a minor matter. I don't know if it has. It would be interesting to see if he has gone to prison for that. No, they didn't prosecute him. That's what's troubling about it. The fact that he wasn't prosecuted? He wasn't prosecuted for it, and it could have been a life sentence. That's the, you know. You're talking about the felony DUI? Yeah. But at the point of the trial, that had not gone to trial, is my understanding. That's exactly the point. Right. He is a witness who is facing a life sentence and gives the prosecution the testimony they want, and he doesn't get the life sentence, doesn't get anything. But it was brought out, and I think this is extremely similar. It was brought out that here's a guy that's not being prosecuted for having weapons, and he's not being prosecuted for drugs, and they know he's a convicted felon, and he's not being prosecuted for that. So I think that Weiner did a very good job of saying, hey, this guy is working for the government, and this guy is a witness that he lies to be able to get off. You know, he's lying so that he won't get prosecuted. I think those very same facts were brought up. And so I think that that's why it's not a problem because of this DUI, because if anything, I think possession of a firearm by a felon would strike a juror as being much more egregious, you know, than someone that is, I mean, they probably wouldn't have understood the intricacy of a DUI that you understand. So I think that unless they had a lawyer explain it to them. That's true. Yes. But I really think in this case, we can be comfortable with the fact that the California Court of Appeal and also the district court, the magistrate judge, went through and just, you know, really looked carefully at what Weiner did, looked at the way he cross-examined Berg, looked at the way that he argued the case in closing argument, and looked at what he had in front of him in terms of tactical purposes. And I think those courts, after looking at all that, concluded that, hey, here's an attorney that he didn't protect this guy in any way, shape, or form. If anything, he was keenly aware that Berg was the crux of the prosecution case and that Berg was the main person that he had to destroy as a witness. And I think he did a great job of that. I think this is one of those cases where we've got bad witnesses and we've got a bad defendant and they're all part and parcel of the same group of people that are running around in the hills of El Dorado, you know, smoking methamphetamine. So I think it's one of those cases where, you know, he destroyed the witness, but we didn't have good witnesses that were, you know, helping the defendant either, or we didn't have strong prosecution witnesses. So it's one of those cases where, you know, he did his darndest to destroy Berg, but there was pretty strong evidence of Lewis's motive for the killing, and we had independent testimony of the motive. And I think that's really what made the difference here, is Berg didn't have the motive to kill Mitchell as Lewis did. And I think that that was really pointed out, the way that his rage had developed that day. And so in any event, it looks to me that from this record, the alleged conflict relating to the prior representation on the DUI did not affect Weiner's representation of Lewis at the trial. Well, how about the testimony of the ex-martial Vilt? Frank Vilt. Who testified that he knew numerous people who would testify that they overheard Berg confess to killing Mitchell. Okay. And the lawyer simply ignored that. See, that was my question to you when I first began. Right. Well, I think there were numerous problems. Don't you think that that is absolutely crucial? Well, I think it's crucial if it's not hearsay and if it's not incredible hearsay. And also, it sounds like Vilt also had information that, from reading his declaration today, it sounds as if Steven Berg had bragged about committing this killing, but then had later retracted it to Vilt and said, hey, I was just puffing, you know, I was just bragging. And so I think when you're a defense attorney, you really have to be careful about people like Frank Vilt to put them on the stand because I think they can go, they can help you, and then they can really hurt you. From my reading of Vilt's declaration. He didn't even follow up on the witnesses that Vilt said he had. Well. They might have been the most credible people in the world. But did those witnesses come to the motion for a new trial and testify? No. Did those witnesses sign declarations? No. I think several of those witnesses, this is all coming from Vilt. And this is a man that's telling us, well, so-and-so is going to say this. We don't have any evidence that those people ever came forward to do that. I think that's why it's not here. That's why we don't have a good record of that because, certainly, if that was all true, then this case would be completely different. So I think that that's the reason. At that time, at the motion for the new trial, when none of these witnesses were produced, there was a different lawyer? There was. It was Bob Blaser, I think. He had taken over. Right. And he's supposed to be a terrific attorney. And so if Bob Blaser is not putting on these people to testify as to what they would be saying at the trial, that leads me to believe that they weren't very credible and that there was a good reason for them not testifying in the motion for a new trial. I think on the record that we have in this case, we can all feel comfortable that Weiner didn't pull any punches, that there's no evidence at all that Berg had any control over Weiner. That claim just seems to me to lack merit. And if anything, I thought he did a nice job at trial of really going out of his way to say, hey, Berg is such a liar and a drug addict and all these other things. He can't possibly convict Lewis because of relying on Berg. And he did a great job of pointing out that would be a very difficult thing to do. But I think because of the other evidence in the case that I pointed out, just the way that the crime went down, the independent witnesses that saw the motive. The motive was there for Lewis. It wasn't there for Berg. So I think that's what happened in this case. Whoever tried the case for the prosecution did a good job because to get a jury to say beyond a reasonable doubt that it was the defendant rather than the nephew takes a lot of selling. The argument you made today is a decent argument as to why he's the more likely one. But to convince a jury beyond a reasonable doubt which one of these two did it takes a good lawyer. I agree. I completely agree with you. And I think it's one of those situations where it would have been nice for us to have been there and to have seen these witnesses because I think we'd have a better feel for it then. But at least from the cold transcript that I read, it was pretty clear that there was something boiling up in the defendant about Mitchell taking the gun and Mitchell disrespecting his family, and that was very clear from the record. And you've got to have a reason to kill someone, and he had that reason. Thank you. Could I have about 40 more seconds? Yes, sir. I hope that the way I styled the brief doesn't add to the miseries of Mr. Lewis because we did And the magistrate clearly ruled, and it's at page 63 of the excerpts of record by the appellant, that this issue was covered in both the magistrate's court and the district court of just a plain Strickland argument. And I styled the same thing, I think. Well, the certificate of appealability was for ineffective assistance of counsel. Right. And so I think it's fairly before you. And whether it's the way you've phrased it to me, I see that probably there should have been another paragraph or two just dealing with that. But the point is that I felt it was clearly not tactical because of the conflict, and that's, I think, why I phrased it that way. But I think it's fairly before you, and Mr. Lewis's conviction is fairly before you that way. Thank you, counsel. Thank you, counsel. The case is heard. It will be submitted. The final case of the morning is Benjy v. Stewart.
judges: Ferguson, Reinhardt, Paez